Next case we'll hear is United States v. Dhirane, and Mr. Kamens, we'll hear from you. May it please the Court, the central question of statutory construction in this case is about the meaning of the term foreign terrorist organization in 18 U.S.C. 2339b, and whether it includes people who act on behalf of the organization in significant ways but are otherwise outside of the control or structure of the organization. The answer to the question is no. Why did you even, I'm confused by that question. What suggests that you have to be controlled by the organization or be in the control of? It basically says that anyone, anyone who provides or attempts to provide material support. So the person can be a total stranger and he provides support to a terror organization, he violates the law. That's absolutely true. The person who provides support can be a total stranger. The recipient has to be a leader of the organization, a member of the organization. It has to be to the organization. In this case, the evidence suggested that the money went to help the fighters in the mountains on the one side and went to the safe houses, one of which was for military support on the other. And it seems to me, if that's established as fact, this notion of who's providing and who the intermediaries are, the fact is that's where the support went. And that's what was found as fact. So first, the district court's finding of liability didn't depend upon the facts in Africa. What the district court found was that simply sending money to these two recipients in Africa, that violated the statute. And then the question is, well, do those people... You left off the whole thing as to what it went for. And I'm quoting, I think, from 1542 of the Joint Appendix, where the district court identifies the legal standard for identifying what constitutes the foreign terrorist organization. So the three statutory arguments we make is, first, to look at the definition of foreign terrorist organization in 2339B. What it says is that a foreign terrorist organization is the organization that's designated by the Secretary of State. And that is incorporated as an element. The district court identifies that as an element. And the leading case on the Secretary of State's authority to designate a foreign terrorist organization is National Council of Resistance of Iran versus Department of State. It's cited on page 24 of the blue brief. It was written by then-Judge Roberts. And what he said is that it includes the power to designate an organization itself, as well as agents of the organization, and looks to ordinary principles of agency law. An agent is someone who acts on behalf of an organization and under their control. And what the district court did is it truncated that test from agency law, and it took half of that. And the reason that we cite that is because cases, courts both in the criminal context and the civil context, have looked at that designation authority to define the scope, even the outer limits, of a foreign terrorist organization. Counsel, can I ask you, and I think this is similar to the question you got from Judge Niemeyer. I mean, so your argument, as I understand it, is that the district court kind of mystified this element of the offense, what counts as a terrorist organization. Right. But even if that were so, why would we have to reverse? Why couldn't you apply kind of a harmless error analysis? I mean, the Supreme Court has said you can do that when an element is mystified for a jury or maybe even not sent to the jury in the first place. We still do harmless error analysis, so why aren't we right back where Judge Niemeyer was, where maybe he defined it wrong but didn't really make any difference in this case because on the facts found by the district court, the money got there. It's a good question, and the answer is that the court can't affirm on a different legal theory. So the case that Your Honor just mentioned is Netter, which is a case about— provided to Mohammed and Abdullak Alahi and through them went to support of the al-Shabaab and described specifically where they went to support of al-Shabaab, one to the soldiers in the mountains and the other to the safe house, which involved the military. That's where the monies went. The court got bogged down in trying and believing it had to define Mohammed and Abdullak as part of the terrorist organization, but it could have been a Swiss banker. I mean, it doesn't matter if the support was provided with knowledge that it was going to and with the intent to provide help to the terrorist organization. That's the violation. He just found more than he needed to find. Judge Niemeyer, if the theory found by the district court was that these people were just conduits, they couldn't have been—they could have been just— Oh, he found more, and he didn't need to, and you attribute error to that finding. In other words, you conclude that he adopted a standard for determining whether Mohammed and Abdullahi were members of al-Shabaab, but they don't have to be members of al-Shabaab.  It's because the district court didn't find guilt based on a conduit theory. The district court found guilt based on a fact. Conduit theory is providing support to. The monies went to the safe house and went to the support of the soldiers in the mountains. The question is how you define the recipient of the money. And so if those recipients are not part of the organization, then the question is— I'm suggesting al-Shabaab was the recipient. And that's what the district court found. And so the district court found that on a legal theory that is unsupported, either in the case law or the text of the statute. So if the recipients are not part of al-Shabaab, then the district court relied on facts that simply are not supported by the actual statute. So the three places that we point to in terms of the statutory construction are the scope of the Secretary of State's authority. And so courts, and specifically courts in the civil context, who find liability when a corporation or some entity engages in a violation of 2339B, the case that we cite is Weiss v. Westminster National Bank on page 26 of the Blue Brief. Let's just be brief with the facts because I think you're not taking into account. Here's fact 10. Jama and Durrani were involved in generating and delivering funds for the benefit of al-Shabaab through the transmission of those funds to these other individuals such as Mohammed and Abdullahi. That's enough to violate the statute. If you consider that those people are part of al-Shabaab. No, no. It's a conduit. It says delivering funds for the benefit of through these people. Your Honor, if you start a trip with the wrong map, you're going to end up in the wrong place. And so that's right. The statute only says providing support to a terrorist organization. That's it. That's right. Okay. And al-Shabaab is concededly a terrorist organization. Absolutely. Okay. So the court found that these monies that they raised were provided to support al-Shabaab. Because the recipients were. Not because. That's all you need. Well, you have to understand who the recipient is. And so in this case, the district court found that the recipients were al-Shabaab and found that the defendants were al-Shabaab because they supported al-Shabaab. The court found that. And the court described exactly the needs that al-Shabaab had and what funded. That they funded the safe houses and funded the soldiers. So the question is, are the recipients members of al-Shabaab or part of al-Shabaab if they are not under their control? And so in the wise case. What are you inserting recipients? The question is, did al-Shabaab get the money? That's right.  And it doesn't matter whether Mohammed was a member of al-Shabaab or not. It does. Al-Bahab received the money and transmitted it for the benefit of al-Shabaab. And these fundraisers did it knowingly. The district court found that the recipients were part of al-Shabaab and that was how the crime was committed. And so if I can, just briefly. I'd like to differ because the facts it found before it got to those facts was sufficient to commit the crime. In other words, it found additional facts, which is whether these two were members of al-Shabaab. But it found those facts based upon a legal standard that was erroneous. So you can find that these people are part of al-Shabaab. But if you're not applying the right test of what defines the foreign terrorist organization, you're going to come to the wrong answer. So in the Weiss case that I mentioned, the defendants were sued in part for funding or for providing material support to charities of Hamas. That was the allegation. There were certain charities that were under the control of Hamas. And the district court said, that's fine. You've alleged a violation of 2339B. But other charities were not under the control of Hamas. They just provided support to Hamas. And they supported the goals of Hamas. And the district court said, that's not enough to allege a violation of 2339B. Essentially providing support to a material supporter of al-Shabaab or Hamas or foreign terrorist organization doesn't violate the statute in itself. That's what we have here. We have here a finding that the monies went to al-Shabaab. Because how they got there is irrelevant under the statute. If these people knew they were funding the needs of al-Shabaab and collecting money to get to al-Shabaab in two fronts, Nairobi and, I mean, on the two sides, and providing money to people who could get it to al-Shabaab in these two locations, and they received it there. I mean, it was used for those purposes. You have a violation. You have material support to al-Shabaab. That's a different theory of liability. And so what the district court found is what actually happened to the money doesn't matter. I think it's 1545 of the Joint Appendix. What the district court said in the findings that you're referring to are to understand the district court's finding that the recipients were members of al-Shabaab. And what the district court said is it doesn't matter whether they're under the control of al-Shabaab. All that matters is they provided some benefit to al-Shabaab. You're arguing that the recipients, that the money didn't go from the recipients to al-Shabaab, but in the factual findings, Muhammad and Abdullah. Abdullahi. Abdullahi provided the money to al-Shabaab. Whether they were members is irrelevant to the violation of the statute. Your Honor, we did argue that below, and we'd like to go back again and argue about what happened to the money. But the real question here for this court is can you establish liability simply because the recipients of the money are supporters of al-Shabaab but aren't members or otherwise under their control. That's what the court found. That's right. And that's not the issue under the statute. The question under the statute is can you violate it simply by providing support to people who support al-Shabaab but are not members or under their control. But that isn't what was shown. In other words, you're supposing that Muhammad could be just a supporter, and you don't know what Muhammad did with the money. But we know what Muhammad was actually own these safe houses which provided military support. The district court found liability regardless of where the money went, Your Honor. And so we can dispute about what happened to the funds themselves or whether they actually went to al-Shabaab. But what the district court found is that that didn't matter. All that mattered is once our defendants sent money to those recipients, that was the violation. That is essentially how the statute was violated. And that holding, that legal theory by the district court, is not supported in the text or the Secretary of State's definition or the structure of the statute. If I can just describe briefly, the 2339B is like a funnel. Essentially anything, virtually anything, can constitute material support. But it is only as provided to a narrow list of 40-some foreign terrorist organizations. 2339A is completely the opposite. It's like a funnel turned upside down. The amount or the type of support that you provide is narrowly defined. It has to be used for an enumerated list of terrorist offenses. But the recipient could be anybody who engages in those terrorist acts. What the district court did is it basically lopped off. Why don't you accept the fact that al-Shabaab received the money? Because it didn't matter to the district court's finding. It doesn't matter whether it mattered. The question is whether the district court found it. Well, the district court found that the recipients supported al-Shabaab, and it listed the things, Judge Niemeyer, that you're pointing to, to support its finding that the recipients were supporters of al-Shabaab. But our point is that providing funds to material supporters of al-Shabaab doesn't itself violate the statute. And the theory that the district court used to find liability here is not reflected in the text of the statute or in the case law. If you look at the court's opinion, it doesn't cite any other case. I guess you don't recognize the problem I'm trying to identify, and so you can just go ahead and address it. Well, I'm trying to answer it. I think the facts that you're pointing to, Judge Niemeyer, were used by the district court to establish the benefit that the recipients provided to al-Shabaab. But what it said is it doesn't matter whether they're actually members of al-Shabaab or whether they're under the control of the foreign terrorist organization as long as they provide support to the organization. What we're saying is that you cannot find a material support case in the country where that is the basis for liability. And if that is the theory that was applied by the district court, you have to send it back. Now, maybe because of the findings that you point to, the district court would find liability under the actual terms of the statute which require that the money actually be provided to the organization itself, but that's not for this court to decide. And we cited Dunn in the briefs as an example, that if the district court provides or uses an invalid legal theory, it's not for this court to use a valid legal theory and determine under a harmless error, for example, that the defendant would be found guilty. It used an illegal theory. It basically made a finding that it didn't need to make, that is that Mohammed and al-Abdullah were members of al-Shabaab, which is irrelevant. I mean, the court found in the footnote, the court finds that the use of that term, this is living expenses that the two defendants used, particularly with respect to support on the Hargeisa side, was not so limited in meaning. Rather, it was used more broadly to refer to general transfers of funds or support to al-Shabaab. So that theory about providing medical support to al-Shabaab soldiers, that was the government's theory of guilt before it was the defendant's theory of innocence, and it was the government who induced the testimony about living expenses, meaning medicine, for al-Shabaab soldiers. And that's why we've said the district court made that contrary finding, but it should have taken that statement as true. It wasn't impeached. It wasn't subject to any contrary evidence, and it was the government's own witness who provided the information. But set all that aside, the court, as Judge Nimar, you just said, the district court found something it didn't have to find. It found that the recipients were not. It's just a gratuitous finding, but it's not an improper theory. I mean, if Mohammed was a member of al-Shabaab, then the recipient is when Mohammed received it. But Mohammed used that money to fund the safe houses and the soldiers in the mountains, and it seems to me that whether she's actually a member or just a bookkeeper or the transfer of the money to the funds or the builder of the tents or whatever it is, is irrelevant because, in the end, the funds went and supported al-Shabaab. Your Honor, it wasn't a gratuitous finding. It was central to the district court's opinion in this case, and our point is that providing funds to someone who is not under the control of al-Shabaab, that that doesn't violate the statute in the same way, for example, that in campaign finance. Who said they weren't under the control? The district court said in its legal test that it did not matter whether the recipients were under the control of the foreign terrorist organization. That is the central basis for its legal test. But the district court also made all of these findings. I mean, this is such an unusual case, right, because usually if we're talking about harmless error and misdefined elements, we have no idea what the jury was thinking, and it makes it very difficult. But here, the district court made these specific findings that they coordinated their efforts with the leaders of al-Shabaab. This is Mohammed and Abdullahi. They were operationally integrated into the organization. The group of 15 was a fundraising arm of al-Shabaab. In light of all of that, I mean, if all of that were true, would you still say, and putting to one side whether the district court made an error in sort of defining this element, but if all of that is true, isn't it the fact that they do count as al-Shabaab? The problem is we can't separate the definition of al-Shabaab from the court's findings. So if al-Shabaab encompasses everybody who supports al-Shabaab. I'm just trying to get a handle on what your definition is. Putting to one side the posture of this case, if all of that were true, they would be al-Shabaab. Our definition is leaders, members, and agents. I'm sorry, leaders, members, and agents. Not just coordination and operationally integrated? Or is that subsumed in leaders? I mean, I think it's subsumed. If I can conclude, these foreign terrorist organizations, they're like quasi-state actors. They have militaries. They control territory. They have leadership.  And so if you're part of that organization, leader, member, agent, under the control of the organization, that's... Let me ask you this. Here's a finding, and let's assume in this finding that Abdullahi is not a member of al-Shabaab. This is what the court found. Abdullahi was involved in receiving money for al-Shabaab in Somalia for such purposes as providing transportation, trucks, and other supported services to al-Shabaab. Now, whether she is a member in that situation is irrelevant to whether there's a violation. The fact is it went to al-Shabaab and supported the organization. And it was a conduit theory. And the court later said these people, there were other conduits getting funds to al-Shabaab. But in the end, the monies got to al-Shabaab where they were intended to get. These fundraisers were intending to support al-Shabaab. That's what he found also. And so the monies get there. Now, you say this conduit, this Abdullahi, who was conveying the money for al-Shabaab and for their trucks and for their transportation and supportive services, you're saying that doesn't violate the statute because Abdullahi was not a member. And the answer is it doesn't matter because Abdullahi was not the ultimate recipient. Abdullahi was the purpose who took the money or spent it for the organization. If the district court found the defendants guilty based on a conduit theory, as you just said? It did. It used the word conduit even. It found, based on the legal theory, that these people were part of al-Shabaab. Now, what you described is Abdullahi being a material supporter. And all we're saying is that providing support to a material supporter is not enough to violate the statute. And that's what the district court held. That isn't all he found. The court found up front he's not just a material supporter, that Mohammed actually supported al-Shabaab. And the monies were conveyed, the monies that these defendants gave to Mohammed were spent on trucks. The district court didn't need to reach that factual finding because... It did. It found it. He didn't. In his opinion, he says, all I need to find is that the recipients themselves are part of al-Shabaab. And once he did, he didn't go any further. And so that's the reason that we're asking for... Well, that last statement's not correct because the court did find that, despite whether he'd made that finding, and that's later in his opinion, his opinion about Mohammed was... avoids the question of tracing monies and individual monies. But as a general matter,  went to Mohammed to al-Shabaab's purposes, either directly with money or buying the trucks for al-Shabaab. In other words, the court didn't say. It says, for such purposes as providing transportation trucks and other supportive services. If I can just respond, the way the district court orders made its judgment, it listed a set of factual findings, including the ones that you described. It then says the legal test on 1542 is, are these individuals supporters of al-Shabaab, regardless of whether they're subject to control? And then third, the defendants provided support to these individuals. And because those people support al-Shabaab, that's enough. Will you take one minute and describe what the error was in the court's findings with respect to Abdullahi and Mohammed? The district court called people al-Shabaab using the wrong test of what defines al-Shabaab. It defined material supporters as part of the organization. No, it put out a test as to what their relationship to the organization was. That's right. What was the error there? And the error was it used half of the test for an agent. It said someone who acts on behalf of the organization in significant ways is a member of the organization. But the actual test that's applied in other cases, Elma Zane and also the Weiss case I mentioned, is that in order to be essentially functionally part of the organization, someone who is on the outer limits has to not only act on behalf of but be under the control of the organization. If someone provides material support to an individual who isn't under the control of the organization, that is not the same thing as providing material support to a foreign terrorist organization. I understand. Okay. Mr. Ellis? May it please the Court, Jonathan Ellis here on behalf of the United States. I agree with much of the discussion in the first half of this argument. Following a five-day pinch trial, the district court here issued a detailed opinion, finding that for more than a year, these defendants played prominent roles in a group of approximately 15 individuals who met regularly in an Internet chat room to make monthly cash contributions for the operation of two safe houses in Nairobi, Kenya, and to provide transportation, trucks, and other services for al-Shabaab fighters, both in Kenya and in the Golis Mountains near Hargeisa. And then they discussed and reveled in the violent acts that those soldiers committed. The defendants here don't argue that a single one of those factual findings is clearly erroneous. They disavow any attempt to show that the court's verdict is not supported by substantial evidence and instead zero in on this list of factors that the court considered in order to decide whether Mohammed and Abdullahi were themselves members of al-Shabaab or simply conduits. We think that analysis was entirely correct and supportive. So you think that it is correct to define a foreign terrorist organization to include any person who is engaged in significant activity on behalf of the FTO relative to that FTO's goals and objectives? We do. And how do you square that with a humanitarian law project that seems to limit the scope of the statute to materially provide any coordination with or under the direction of the FTO? I don't think there's any. They could be operating entirely. I just happen to support them. I don't work with them at all. They don't know who I am. I've never had any contact with them, but I happen to be a supporter. So I don't think that's what the district court was trying to say here. I don't think the test that they established... Engaged in activity on their behalf. What if I write editorials supporting them? So I don't think that's your acting on behalf of the terrorist organization. I think this is clear. What's helpful is to look at both the discussion before and after that statement to figure out what the district court meant. Before that statement, the district court made very clear that it was looking to the definition of personnel, the same definition that the Supreme Court looked to in the humanitarian law project. Another concern I had, that that definition is really clear to say this does not include people who are supporting but acting independently of the organization. And I don't see that in the district court standards. So I'd say the first indication of that is a statement where the district court says, quite clearly, the definition of personnel shows that it does not include people working entirely independently. Can I tell you my concern? It's possible you could cobble together, like, oh, if you read it in context, maybe it meant this. But this is sort of a published opinion. It's going to, like, live on. And I am concerned that at least one could read it to include people who are operating independently of but on behalf of an organization. So I think that's not the best reading. Obviously, the one that's going to control is this court's opinion going forward. And if the court wants to make clear that's not correct, I think that the district court said exactly that. I think that's the best reading. I also think if you look at the factors, the seven factors, which we don't think was supposed to be... Yeah, but the court says you don't need any of them. They're not despised. So I don't think we can really use them to limit the definition. So I think that you should look at those to see how the district court was thinking through this question. And I don't think there's any showing that the district court would have found someone to be a member of the organization when they were acting independently. But now, I was going to say that I entirely agree with the first part of this discussion here, that all this doesn't really matter because it just doesn't matter whether Muhammad or Abdullahi were members of the organization or conduits because, as Judge Niraj pointed out, the district court was very clear with its findings that this money then went from Muhammad and Abdullahi to provide material support directly to al-Shabaab fighters. And I don't think there's any indication in the district court's opinion or any reason in the defendant's briefs in this court to think that those individuals, the al-Shabaab fighters, in the mountains of the Golis Mountains or in the safe houses, both the military and the medical, were not members of al-Shabaab under any test that you might adopt. And because of that, it just doesn't matter in this case whether Muhammad and Abdullahi were conduits or full-fledged members of the organization itself. So what you're saying is that all that is necessary then is that there be an intent on the part of the defendants to give material support, and that, in fact, the support they gave, in this case money, did, in fact, reach the terrorist organization. So I want to be clear. There are two different crimes at issue here. One is conspiracy. For that question, all there needs to be is an agreement to provide material support to the organization. It doesn't have to reach the organization at all. For the subsequent counts... I realize that. I'm talking about the substantive crimes. So those, you've got to either show that the material support made it to the organization or... So intent plus making it to the organization, you're saying is enough? Well, it's also an attempt crime. So you can also, even if it doesn't make it... Right, I'm talking about the substantive crime. For the substantive crime, I think you have to have, no, it's not intent, it's knowledge, but you have to knowingly provide material support to the organization. And whether that material support is going from you directly to a member of the organization or directly to the bank account, or through someone else to the organization, it doesn't matter. I think if you look at this court's decision in Helmoud, in that case it's very clear that the defendant gave the money to his friend, who there was no allegation at all that that person was a member of... There were findings that there was actual coordination with the al-Shabaab leaders to provide military support. And so there's no question about whether it was independent or gratuitous. There was a coordination with the al-Shabaab leaders here. That's right, that's correct. There was a finding of fact to that effect. Absolutely, and I think that the defendants argue that it all rises and falls with this idea as to whether Mohammed and Abdullahi were part of, because that's what the district court found. But he stops his description of the court's analysis. The court then went on to say, so the court says the defendant has two arguments, or a two-step argument here.  And then number two, the only money that went to them, because they're not part of, then went on to provide medicine to the organization. And the district court rejected both steps. So the district court did say that Mohammed and Abdullahi were part of the organization, in which case it could stop there. But it went on to say, even if that were not true, even if I had to reach the medicine question, they don't qualify under that exception either, both because the material support here, the money, went to fund far more than medicine. And I'm not here just talking about whether it was drugs or services. It was also a safe house. It was providing cover from the authorities. It was also the non-medical safe house, providing military staging. And it was also the transportation trucks and services in the mountains, in the Golis Mountains.  Even if that, I don't think that was required, but the district court did that here and found the findings fully support a finding of guilt. What's your response to the alleged error that in finding that somebody is an agent of an organization, you have to demonstrate control by the organization? So I don't think there's any basis for that kind of holding here. The defendants point to National Council of the Resistance and the Weiss case. Those cases are not about when an individual is or is not a member of a clandestine organization like a terrorist organization like al-Shabaab. Those cases are about when you can just deem an entity that is not themselves, that have not themselves been designated as a terrorist organization by the Secretary of State, to nevertheless be the same thing, to be an alias. You didn't have to then go on to find what individual would make up that organization. I think the better place to look would be the Supreme Court's decision in Killian, which went through a similar set of factors about who is and who is not a member of the Communist Party. I think there are other decisions in the courts of appeals that one was not cited in the brief, so I don't know if the court was interested. No, I'm happy to share, but I don't want to overstep there. I just want to make sure I'm understanding your answer to this question and your answer to mine. Your position is that the reason the district court's definition of part of, the equivalent of a foreign terrorist organization is not incorrect, I thought was that because it's properly read to require at least some coordination or to exclude people who are operating independently. Absolutely. But I think there's a difference between operating independently and operating under the direction of control. I think the best place to look for that is the definition of personnel, which lists separately operating at the direction of control of the organization or managing, supervising, overseeing the operation. I think that's what the district court looked to here to craft its test and noting the very clear exception that it's not independent. Okay. The court found here that Mohammed and Abdullahi actually coordinated with the leaders of al-Shabaab in providing their assistance. That's right. Is that enough to make them a member? It may be. I'm a little bit hesitant to answer that. It is not a contest with bright lines, as the court and Killian recognize, as the court and this court recognize. I think surely the actions that were taken here are sufficient, both by Mohammed and Abdullahi and by the defendants themselves, both coordinating and then providing the support. Well, the court did find not only did they coordinate with the leaders in providing support, they actually did provide support. Absolutely. And providing safe houses, transportation, trucks, and that sort of thing. That's correct. Yes, Your Honor. And it found that at least one of them, I can't remember which one, I'm sorry, was operationally integrated into al-Shabaab. That's right. There was Mohammed. I mean, that would be enough, right? Yes. Yes, it would be. Certainly. Can I ask you just to be, I don't want to put words in your colleague's mouth, but I understand the defendants to be saying, look, sure, there's a lot of facts out there on which maybe the district court could have found liability, but it didn't. It found liability on this other theory that was incorrect, and therefore this has to go back to the district court. I mean, there's no such thing, basically, as us just saying, well, we can see all these other reasons why it could have been held liable. What's wrong with that? So that argument rests on a case, on Griffin and Yates' line of cases, where we're talking about general jury verdicts, where you just don't know what the jury found, and so it makes perfect sense in that case to say, well, you've got a legally sufficient and a legally insufficient theory. We can't just say it's enough for the legally sufficient. But that's not this case. Number one, I don't think it's true the district court didn't go on to find under that theory. I'm sorry. Let's assume there was an error. Sure, sure. And then number two, we know exactly what the district court thought and made very clear and detailed factual findings. None of those factual findings constitute a clear error here. I do want to address this idea that living expenses is only going to refer to medicine and that somehow when S.A., the cooperator, made one statement to that effect, that should be sort of dispositive of that question. Of course, there's a factual finding to the contrary. As Judge Nimary, you pointed out, no one showed a clear error there. And it's just not true. There's not other evidence in the record to support that finding, that living expenses referred to more than just medicine. Well, there's a, on page 1542, the whole paragraph there really describes that they functioned integrally as part of Al-Shabaab. I mean, they coordinated with and provided funds. They were not operating independently. They were not connected to any other ideology. The funds solicited and received were specifically for A.S. and no one else. And she operationally integrated into the A.S. organization and coordinated her own activities with A.S. broader organizational goals over a period spanning multiple years. I mean, and it goes on in this regard. So she was operationally, the question I think your colleague is raising is the test for defining whether somebody is an agent of an organization requires control. And I'm not sure that's a, whether that's required or not. That's the legal issue he's raising. Right. And I think that the court's, the Congress's definition of personnel that makes very clear it goes beyond control is dispositive of that question. I don't think the cases concerning what other entities are themselves or sort of alter egos of a terrorist organization are to the contrary. And I, in any event, I don't think, as we've been discussing this morning, it matters whether these folks were members of the organization because no one disputes that the soldiers that used these safe houses and the soldiers that received these, the trucks and the supplies in the Golis Mountains were not members of al-Shabaab under any definition of that phrase. And so I don't think here the question is squarely presented to the court. Is that it? If you have any further questions, we'd ask the court to refer them. All right. Mr. Kamens. I can just make four brief points. First, if the district court is going to find al-Shabaab under every rock, it's going to find that there is coordination. And so specifically in its factual findings with respect to Paragraph 9 that Judge Niemeyer, you quoted from, it is talking about the role of the recipients. And it says these people played important roles in providing support for al-Shabaab. It is not with respect to the money that was actually provided by the defendants, the $4,700. And so what it says is these facts show that the recipients were supporters of al-Shabaab, and therefore, because those facts show that they are supporters in significant ways, they are essentially no different from al-Shabaab, and providing support to them is a violation of the statute. Except the court said the funds received were received and given to al-Shabaab and received for no other purpose. Because the recipients themselves were supporters of al-Shabaab.  We've discussed that at length. These facts go to the role of the recipients and not what actually happened with the money. When the court said that there was coordination between the defendants or that they had interaction with al-Shabaab leaders, if that was true with respect to the direction of where money went, we wouldn't even be here. But there is nothing in the record to show that the actual money that went to these recipients was at the direction of actual al-Shabaab leaders. That's why the district court went down this road, because there was very little evidence in Africa about what actually happened. There was very good evidence, and we conceded that the defendants provided money to these two individuals. And so the only question at trial is, is that enough essentially to satisfy the statute? When the court talks about conduits... That's hypothetical. If an American citizen raises a million dollars, takes the million dollars and gives it to a person in Africa, and says, this is intended for use of al-Shabaab operations, and I want you to get it to them for using for their effort and their goals. And those monies are then taken and given to the known leader of that organization and say, here, this is for trucks and ammunition. Is that a violation of the statute? Absolutely. That is simply a conduit, a pass-through. It's directly providing money to al-Shabaab, and that's not what we have here. That's what those findings on 42 and 43 say explicitly, that the funds were used explicitly for al-Shabaab, taken explicitly, given to the leaders, coordinated with them, obtained funds for use of AS, and solicited those funds for that purpose alone. And they said it was used for these purposes, and then the court explained exactly what was used, whether it be purchased for the x-ray machine, the payment of rent on safe houses, the payment of trucks, payments of other AS-specific needs. Overall, they undertook significant activities on behalf of AS, so as to be appropriately considered, well, as to be considered part of. That's another issue. Can I be clear about one thing? If a defendant provides money to al-Shabaab for the purpose of providing medical care or for buying an x-ray machine, it does not matter. That is providing support to al-Shabaab that it has control over. The difference here is that the defendants are saying the recipients were not actually al-Shabaab. And so the rationale from the Humanitarian Law Project about fungibility and it doesn't matter what kind of assistance you provide, that matters when you're not providing funds to al-Shabaab itself, but simply to individuals who are material supporters. But the court found that they were buying trucks, and they were buying a safe house for a military staging point, operating one. And coordinating with the leadership to find its needs? Is that enough? All in finding that the recipients themselves may be liable for material support. But providing support simply to material supporters doesn't violate the statute. What about if you know the material supporters are going to provide the support to the organization and, in fact, do so? If the support is simply meant to be conduits, then, yes, that violates the statute. What about if you are providing money to independent providers of support? Of course, the court found they were not independent. Can I give one example? Let's say that an individual knows Doctors Without Borders provides medical care, a service in an al-Shabaab area, and the individual provides support to Doctors Without Borders. That doesn't violate the statute. Doctors Without Borders isn't under the control of the Foreign Terrorist Organization. The district court recognized that and excluded that explicitly, Doctors Without Borders and Red Cross. Well, but it did based on, essentially, a legal test that it came up with out of thin air. These were factual findings. Well, we can talk about the factual findings, but, again, you've got to start with what the legal test is. And the reason that we've asked for remand is because the district court used the wrong legal test to define the recipient of material support. Okay, I think we understand that. Thank you. Let's come down and brief counsel, and we'll proceed on to the last case.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Pamela A. Harris